UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>HIGH VOLTAGE ENGINEERING CORPORATION, *ET AL.,*<br><br>DEBTORS. | CHAPTER 11<br><br>CASE NO. 05-10787 (JNF)<br><br>(JOINTLY ADMINISTERED) |

**APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF CHANIN CAPITAL PARTNERS LLC, AS FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *NUNC PRO TUNC* TO MARCH 29, 2005**

The Official Committee of Unsecured Creditors (the "Committee") of High Voltage Engineering Corporation ("HVE") and its affiliated entities[1] (collectively, the "Debtors"), submits this application (the "Application") for an Order pursuant to 11 U.S.C. §§ 1103 and 328 of the United States Bankruptcy Code, (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and the Massachusetts Local Bankruptcy Rules ("MLBR") 2014-1 and 2016-1, authorizing the retention of Chanin Capital Partners LLC  ("Chanin"), as financial advisors to the Committee, *nunc pro tunc* to  March 29, 2005.   In support of its Application, the Committee shall rely upon the Affidavit of Mark Rubin, Managing Director of Chanin (the "Rubin Affidavit") attached hereto as Exhibit "A" and respectfully represents as follows:

**JURISDICTION**

1.    This Court has jurisdiction pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] HVE Acquisition Corp. ("HV-Acquisition"), Hivec Holdings, Inc. ("Hivec"), Robicon Corporation ("Robicon"), Nicole Corporation ("Nicole") and Ansaldo Ross Hill, Inc. ("ARH").

## BACKGROUND

2.      On February 8, 2005 (the "Petition Date"), the Debtors, as debtors in possession, commenced the above styled cases in this Court under Chapter 11 of the Bankruptcy Code.

3.      The Debtors operated their businesses and managed their affairs as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code until a Chapter 11 trustee was appointed by the United States Trustee pursuant to an order this court entered on February 17, 2005.

4.      The Debtors and their non-debtor affiliates and subsidiaries are engaged in a group of industrial and technology based manufacturing and services businesses. The Debtors' operating and manufacturing facilities, including those owned or leased by the Debtors' non-debtor affiliates and subsidiaries, are located in Pennsylvania, Minnesota, Massachusetts, California, Italy, the Netherlands, the United Kingdom and other foreign countries. The Debtors' products and services are divided into the "Industrial Power Control" and "Advanced Surface Analysis" segments.

5.      The Debtors' Industrial Power Control segment includes the Robicon and ARH Debtors, and certain non-debtor foreign subsidiaries of HVE, including ASIRobicon S.p.A. (together with its subsidiaries, "SpA"). Robicon is a leading designer and manufacturer of high power conversion products, which are used to regulate electrical power, reduce energy costs and improve process control in a wide variety of industrial applications. SpA, with its headquarters in Milan, Italy, is one of the leading manufacturers of electrical and automation systems, power electronics, motors and generators for various applications and industrial sectors.

-2-

6.     The Debtors' Advanced Surface Analysis segment has two main components, equipment sales and analytical services. The companies in this business segment include the Evans Analytical Group ("Evans"), a division of HVE, and High Voltage Engineering Europa, B.V. ("HVE Europa"), a non-debtor entity located in the Netherlands. Evans provides analytical services using beams of ions, electrons or x-rays to probe the surface and micro-regions of high technology materials in order to provide data on the composition and chemistry of such materials. HVE Europa is the world's leading designer and manufacturer of particle accelerator systems, which are used primarily for materials science, semiconductor research and carbon dating.

7.     The Debtors, along with certain non-debtor affiliates (collectively, the "Former Debtors"), previously filed for protection under chapter 11 of the Bankruptcy Code in the District of Massachusetts on March 1, 2004. The prior bankruptcy cases (the First Chapter 11") were docketed as case numbers 04-11586, 04-11593 and 04-11595 through 04-11603. Prior to the filing the First Chapter 11, the Former Debtors negotiated a restructuring agreement (the "Restructuring Agreement") with the majority of the holders of HVE's 10½ % Senior Notes whereby the holders of the notes agreed to convert their notes to equity in a restructured HVE.

8.     The plan of reorganization (the "First Plan") in the First Chapter 11 was confirmed on July 21, 2004 and became effective on August 10, 2004. The First Plan provided that all of the Former Debtors' unsecured debt (other than the notes that were converted to equity) was to be paid in full in three equal installments beginning thirty days after the plan became effective. As of the Petition Date, the Debtors have satisfied the outstanding allowed administrative and unsecured claims from the First Chapter 11.

9.      Although the First Plan significantly reduced the debt service requirements of the Debtors by eliminating the Senior Notes, the Debtors again began experiencing a serious cash shortage shortly after emerging from bankruptcy. In order to preserve cash and continue to meet their most critical expenses, the Debtors have been forced to delay payments to many of their trade vendors and furlough a number of Robicon's employees. In addition, Robicon has begun requiring payment on a COD basis from ASI before shipping goods to ASI, its affiliate.

10.     On February 17, 2005, the Office of the United States Trustee appointed the Committee pursuant to § 1102 of the Bankruptcy Code. The Committee then retained Lowenstein Sandler to serve as its counsel. Also on that date, the Court denied the Debtors' motion to approve post-petition financing and ordered the appointment of a Chapter 11 trustee.

11.     On February 18, 2005, the Court approved the United States Trustee's appointment of Stephen S. Gray of The Resource Group as the Chapter 11 Trustee.

12.     On February 23, 2005, the Court approved the Chapter 11 Trustee's motion for interim use of cash collateral.[2]

13.     On March 29, 2005, the Committee selected Chanin as its financial advisor.

### RELIEF REQUESTED

14.     By this Application, pursuant to Sections 1103 and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and MLBR 2014-1 and 2016-1, the Committee seeks to employ and retain Chanin as financial advisor, *nunc pro tunc* to March 29,

---

[2] A series of cash collateral orders have been entered by the Court and provided for payment of fees for the Committee's professional.

2005, for purposes of general bankruptcy representation in these cases. Chanin has substantial experience in bankruptcy, insolvency, corporate reorganization, debtor/creditor law, and commercial law, and has represented numerous creditors' committees and other parties in interest in Chapter 11 cases in many jurisdictions throughout the United States. An Engagement Letter setting forth the terms and conditions of Chanin's retention and its compensation is attached hereto as Exhibit "B".

15.    Chanin is a financial advisory and investment banking firm which maintains offices at 330 Madison Avenue, 11th Floor, New York, New York 10011. Chanin provides a broad range of corporate and financial advisory services to its clients including, without limitation, services pertaining to: (i) general financial advice, (ii) corporate restructurings, (iii) mergers, acquisitions, and divestitures, (iv) capital raising and (v) special committee assignments. The Managing Director responsible for this engagement is Mark Rubin.

16.    Chanin's services are necessary to enable the Committee to faithfully execute its duties as the fiduciary representative of unsecured creditors in the administration of the Debtors' estates. Subject to Court approval and subject to the delineation of responsibilities discussed below, the Committee anticipates that the professional services that Chanin may be required to render include, but are not limited to, the following:

(a)    Review and analyze the Debtors' operations and financial condition, business plans and strategy, operating forecasts and management;

(b)    Analyze any merger, acquisition, divestiture, joint-venture, or new project transactions proposed by the Trustee;

(c)    Review and provide analysis and recommendations regarding any

proposed dispositions of assets of the Debtors, post-petition financing, proposed operational changes, and the proposed non-ordinary course expenditures, including employee retention plans and other related programs;

(d)     Assist the Committee in developing, evaluating, structuring and negotiating the terms and conditions of a restructuring, plan of reorganization, or sale of substantially all of the Debtors' assets;

(e)     Provide the Committee with other financial advisory services with respect to the Debtors, including valuation, general restructuring advice, and expert testimony with respect to financial, business and economic issues, as requested by the Committee; and

(f)     Confer with Trustee's financial advisors regarding any of the foregoing and appraise the Committee of same.

17.     The services to be rendered by Chanin will not duplicate the services to be rendered by any other professionals retained by the Committee in this bankruptcy case.

## COMPENSATION

18.     It is contemplated that Chanin will be compensated for the services described herein, in accordance with paragraph 3 of its Engagement Letter, all pursuant to the provisions of §§ 330 and 331 of the Bankruptcy Code.

19.     Chanin has not received a retainer in connection with its representation of the Committee in these Chapter 11 proceedings.

20.     The Committee understands that any compensation and expenses paid to Chanin must be approved by this Court upon application consistent with the Bankruptcy Code, applicable Bankruptcy Rules and any order of this Court governing the payment of fees and expenses.

## DISINTERESTEDNESS

21.    To the best of the Committee's knowledge and subject to the Williams

Affidavit submitted herewith, Chanin represents no other entity in connection with these

cases, does not have any connection with the United States Trustee or any person

employed by the United States Trustee, is a "disinterested person" as that term is defined

in § 101(14) of the Bankruptcy Code, and does not hold or represent any interest adverse

to the Debtors' estates with respect to the matters upon which it is to be employed.

**WHEREFORE**, the Committee respectfully requests that this Court enter an

Order authorizing it to retain and employ the firm of Chanin, as counsel to the Official

Committee of Unsecured Creditors in these proceedings, *nunc pro tunc* to March 29,

2005, on the terms and conditions set forth herein, with fees and expenses to be paid

pursuant the Bankruptcy Rules, the Local Rules of this Court, and such other orders of

this Court, and for such other and further relief as the Court deems necessary and just.

Respectfully Submitted,

**Official Committee of Unsecured
Creditors of High Voltage Engineering
Corporation,** *et al*

By: _____

John Rindle, Chairperson
Hitran Corporation

Dated: April 30, 2005

-7-